# Betsy Roberts, Respondent, v Vera Pollack, Appellant.

First Department, April 7, 1983

APPEARANCES OF COUNSEL

*Steven J. Shore* of counsel (*Alan C. Fried* with him on the brief; *Schwarzfeld, Arnoff & Shore, P. C.,* attorneys), for appellant.

*Deborah A. Porder* of counsel (*Daniel Eisenberg* with her on the brief; *Greenfield Eisenberg Stein & Senior,* attorneys), for respondent.

OPINION OF THE COURT

SULLIVAN, J.

This action has its origins in the service of a subpoena requiring Betsy Roberts, plaintiff herein, to appear for a postjudgment examination (CPLR 5223) inquiring into the extent and whereabouts of the assets of her husband, Richard Roberts (Roberts), the judgment debtor. Roberts' former mother-in-law, defendant Vera Pollack, is the judgment creditor by virtue of an assignment of the judgment, which has remained unsatisfied since 1976.

On July 12, 1971 Chemical Bank extended a $72,000 loan to Roberts, who in return gave the Bank his promissory note, the payment of which defendant, his then mother-in-law, not only guaranteed but also secured by providing the necessary collateral. When Roberts failed to repay the loan Chemical Bank commenced an action on the note. Roberts' default in that action led to the entry, on February 23, 1976, of a $76,430.79 judgment against him which defendant, as guarantor of the note, was obliged to pay when the Bank was unable to collect from Roberts. Subsequently, on June 15, 1978, in consideration therefor, the Bank assigned all of its right, title and interest in the judgment to defendant. In the interim, however, in 1976, Roberts and defendant's daughter, who had been suffering

from anorexia nervosa since the early 1960's, had been divorced. Defendant's daughter died on August 10, 1978.

On July 10, 1979, over three years after the entry of judgment, and only after a warrant of commitment had been issued for his failure to appear for postjudgment examination, Roberts moved to vacate the default judgment, arguing, *inter alia,* that defendant had induced him to sign the note on the oral promise that she would repay the loan. That motion was denied and the order unanimously affirmed by this court (*Chemical Bank v Roberts,* 78 AD2d 782). When Roberts finally did appear he refused, despite a judicial direction, to answer any questions other than to furnish his name and address. A motion to hold him in contempt has been granted.

Frustrated in her efforts to examine Roberts, defendant attempted to serve a subpoena upon plaintiff, who had married him in June, 1980. Since entry into the building in which the Robertses resided was barred, service was effected by leaving a copy of the subpoena and witness fee with the doorman and mailing a copy to plaintiff at that address. Plaintiff failed to appear, as required, and defendant moved to punish her for contempt. Plaintiff crossmoved to vacate the subpoena on the grounds that she was out of the country at the time service was made. The court granted the cross motion, noting that: "Inasmuch as there has been no showing that movant, unlike her husband, has ever sought to avoid being examined in supplementary proceedings, and in further view of the fact that she could not have appeared even if service on the doorman was proper, because of her absence from the country, no purpose would be served by referring this matter to a referee for a traverse hearing on the issue of service. If the judgment-creditor wishes to examine Mrs. Roberts in supplementary proceedings, it is suggested that she re-serve her with a subpoena in one of the ways provided in the CPLR, and should she fail to respond to the new subpoena, that she then take whatever action she deems appropriate."

Within one week of the court's determination plaintiff, alleging malicious prosecution, abuse of process, prima facie tort and intentional infliction of emotional distress, commenced this action to recover both compensatory and

punitive damages. Plaintiff alleges that Roberts, in dire financial straits, was compelled to borrow $72,000 from Chemical Bank to pay for the psychiatric and medical treatment which his then wife, defendant's daughter, required and that defendant, knowing that Roberts was unable to do so, promised to pay the note at maturity and to forego any rights she might acquire through enforcement of the guarantee. Needless to say all of this is denied. According to defendant, Roberts took out the loan to start a new business. In any event the purpose of the loan is not an issue on this appeal.

Plaintiff further alleges that defendant reneged on her promise to repay the loan out of pique at Roberts for her daughter's marital difficulties, and that defendant's efforts to collect the assigned judgment are motivated by a fierce hatred for him stemming from her daughter's divorce and subsequent death. According to plaintiff, defendant's service of a subpoena calling for her appearance at a time when defendant knew that she was out of the country was designed to humiliate, embarrass, inconvenience and oppress her and her husband. Plaintiff contends that defendant, notwithstanding knowledge that she was out of the country, that she had no information concerning her husband's finances and that, in any event, any information she might have would be privileged, initiated a contempt proceeding against her.

Defendant moved to dismiss the complaint for failure to state a cause of action, pursuant to CPLR 3211 (subd [a], par 7). Finding that plaintiff's "allegations of actual malice, disinterested malevolence and lack of justification contain the minimal requirements necessary to state a cause of action", Special Term denied the motion. We find that the complaint fails to state a cause of action and, accordingly, reverse and dismiss.

At the outset we note the renewed challenge to the validity of the underlying judgment on the ground that defendant failed to redeem a promise to repay the loan. As already observed, this argument was previously raised in the motion to vacate the judgment, and rejected both by Special Term and this court. We similarly reject the latest attempt to inject this feckless issue into the case.

On a motion addressed to the sufficiency of a complaint the facts pleaded are presumed to be true and accorded every favorable inference. (*Morone v Morone,* 50 NY2d 481, 484; *Cohn v Lionel Corp.,* 21 NY2d 559.) On the other hand, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration. (See *City of Albany v McMorran,* 16 AD2d 1021, 1022.)

The essence of the tort of abuse of process lies in the improper use of process, viz., unlawful interference with one's person or property under color of process. (*Williams v Williams,* 23 NY2d 592, 596.) The element of interference is satisfied when regularly issued process, civil or criminal, has been used to compel "the performance or forbearance of some prescribed act." (*Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO,* 38 NY2d 397, 403.)

Since *Farmingdale* (*supra*) also involved the use of a subpoena its facts are worth recounting. There, a bitter dispute had erupted between a school district and a teacher's association. The association and its attorney were accused of abusing legal process by issuing subpoenas, with the intent to harass and injure, to 87 teachers and refusing to stagger their appearances, thus compelling the school district to hire substitutes to avert a total shutdown of the schools. In sustaining the complaint the court found that these allegations were sufficient to support an inference that the use of lawfully issued process was being perverted to inflict economic harm on the school district. The court recited three elements as essential to a cause of action for abuse of process (38 NY2d, at p 403): "First, there must be regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act. Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification * * * Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process."

■ Here, defendant, as the assignee of a judgment against a judgment debtor who had refused to answer any questions other than his name and address at his own examination, was justified in issuing a subpoena to his wife. No citation is required for the proposition that an attempt to collect a money judgment is a traditionally accepted economic justification for the use of a third-party subpoena in supplementary proceedings. Were it otherwise the provisions of CPLR article 52 relating to the enforcement of judgments would be totally emasculated. Moreover, the third element of the tort of abuse of process — that a party must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process — is similarly lacking. Plaintiff's allegation that the subpoena was intended to inflict emotional harm does not suffice since defendant had reason, legitimate and indisputable, to subpoena her. Plaintiff's allegations that defendant knew she was out of the country, that service of the subpoena was not made in conformity with legal requirements and that any information she might have is protected by the marital privilege are unavailing. The impropriety of the service of the subpoena and the applicability of the marital privilege are not statements of fact which must be accepted as true for purposes of this motion, but instead are erroneous conclusions of law not supported in the record.

Plaintiff's reliance upon the marital privilege (CPLR 4502, subd [b])* as barring any inquiry of her concerning her husband's finances assumes, without factual basis, that her only knowledge as to the whereabouts of assets to satisfy the judgment emanates from her husband. Moreover, even if the husband were the exclusive source of plaintiff's information, the privilege might still be unavailable since "not all communications between husband and wife are confidential" (*People v Dudley,* 24 NY2d 410, 413). "Under the New York decisions * * * inquiries * * * into such matters as the existence and location of * * * bank accounts and * * * ownership and transfer of property

---

\* CPLR 4502 (subd [b]) provides, "A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage."

would not seem to invade the marital privilege." (*G-Fours, Inc. v Miele,* 496 F2d 809, 812.) The only protected disclosures are those "which would not have been made but for the absolute confidence in, and induced by, the marital relationship." (*People v Melski,* 10 NY2d 78, 80.) Thus, ordinarily, defendant would be entitled to examine plaintiff about her husband's business and financial affairs as well as her personal knowledge of the whereabouts of any assets. If the marital privilege lies it may be asserted only in response to a specific question, and not, in the first instance, as a shield against all inquiry.

Similarly, the allegation that the subpoena was improperly served is a legal conclusion without any factual support. In denying defendant's motion to hold plaintiff in contempt the court did not find that service of the subpoena was improperly made. Rather than hold a traverse hearing on the issue of service the court suggested that defendant re-serve the subpoena. Further, even if defendant knew plaintiff was out of the country, an assertion which defendant categorically denies, process for a valid purpose may be issued at any time. If service is not effected the person upon whom service is sought is not prejudiced. It should be noted that the manner of service employed here was sanctioned in *duPont, Glore Forgan & Co. v Chen* (41 NY2d 794). In any event the allegation, made upon information and belief, that defendant knew plaintiff was out of the country is a "red herring". The subpoena directed to plaintiff, as well as the subpoena served contemporaneously naming her husband, was prepared, not by defendant, a widow of advanced age, but by defendant's attorneys, in whose names it was issued and for whose obvious convenience a return date was selected.

■ Nor does the complaint state a cause of action for malicious prosecution, an essential element of which is the termination in plaintiff's favor of the former proceeding, here the contempt proceeding. (*Hauser v Bartow,* 273 NY 370; *Miller v Milligan,* 48 Barb 30; see, also, *Burt v Smith,* 181 NY 1, 5; Prosser, Torts [4th ed], § 120, p 853.) Since the court in the earlier proceeding merely directed defendant to re-serve her subpoena, and found that a traverse hearing would have been purposeless because plaintiff was out

of the country on the return date its decision cannot be considered an adjudication on the merits in plaintiff's favor. Thus, the manner of termination of the contempt proceeding fails to establish defendant's lack of reasonable grounds for commencing it. (See *Halberstadt v New York Life Ins. Co.,* 194 NY 1, 11.) Moreover, as already noted, since defendant had a legitimate business purpose in issuing the subpoena and pursuing the contempt proceeding after plaintiff did not appear, the facts, as alleged, do not constitute malice, an essential element of the tort of malicious prosecution. (*Burt v Smith, supra,* p 5; *Munoz v City of New York,* 18 NY2d 6, 9-10.)

■ Equally meritless is the cause of action for prima facie tort, defined as "the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful" (*Ruza v Ruza,* 286 App Div 767, 769; see, also, *ATI, Inc. v Ruder & Finn,* 42 NY2d 454, 458). As previously discussed, defendant's service of a subpoena, and the consequent contempt proceeding, were not corrupt, but instead merely constituted a legitimate attempt to collect a judgment. Plaintiff fails to allege facts sufficient to demonstrate that in issuing the subpoena defendant was motivated solely by a desire to harm or torment her. Where other motives exist, such as profit, self-interest, or business advantage, prima facie tort does not lie. (*Squire Records v Vanguard Recording Soc.,* 25 AD2d 190.) Thus, the complaint fails to allege facts sufficient to support a claim of malicious intention to injure the plaintiff, an essential ingredient of a prima facie tort. (See *John C. Supermarket, Inc. v New York Prop. Ins. Underwriting Assn.,* 60 AD2d 807.) "It would be unwise * * * to allow every unrealized cause of action to be tortured into a prima facie tort action, by the liberal application of 'malicious' to the motives of the disappointed plaintiff, thus affording a forum for a never-ending source of new litigation." (*Belsky v Lowenthal,* 62 AD2d 319, 322.)

■ Finally, the complaint fails to state a cause of action for intentional infliction of mental distress. Recovery for such a tort lies "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of

harassment or intimidation" (*Nader v General Motors Corp.*, 25 NY2d 560, 569; see, also, *Long v Beneficial Fin. Co. of N. Y.*, 39 AD2d 11). Aside from the absence of malice, the cause of action fails because plaintiff alleges only one instance of allegedly aggravating conduct, instead of the series of acts necessary to establish a viable action. Although labeled "intentional infliction of mental distress" the fourth cause of action, in terms of the facts pleaded, offers nothing to distinguish it from the other three.

In sum, the entire complaint must be dismissed because the facts alleged do not support the theories of recovery advanced.

Accordingly, the order, Supreme Court, New York County (NADEL, J.), entered October 13, 1982, denying defendant's motion to dismiss the complaint for failure to state a cause of action should be reversed, on the law, with costs and disbursements, and the motion granted.

SILVERMAN, BLOOM, FEIN and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on October 13, 1982, unanimously reversed, on the law, and the motion to dismiss the complaint granted. Appellant shall recover of respondent $75 costs and disbursements of this appeal.