■ Donald J. Brown, Appellant, v Albert Einstein College of Medicine of Yeshiva University, Respondent.—Order, Supreme Court, New York County (Edward Greenfield, J.), entered March 6, 1990, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), affirmed, without costs or disbursements.

Plaintiff, a 53 year-old practicing psychologist, who alleges age discrimination under Executive Law § 296 (4), has not shown that he has a cognizable cause of action, since the undisputed facts indicate that his academic performance was below the accepted standard for admission to the defendant medical school. In the year plaintiff applied the estimated undergraduate grade point average (GPA) in the basic sciences (biology, chemistry, physics and mathematics) of defendant's admitted students was 3.5 (B+/A). Plaintiff's GPA in this area was 1.98 (C−), significantly lower than any student admitted that or any other year. The overall average GPA of that year's class was 3.4; plaintiff's undergraduate GPA was 2.09. His Medical College Admission Test (MCAT) scores were similarly well below average. The Chairman of the Admissions Committee in his affidavit and the published admission requirements and procedures stress that one of the essential criteria for acceptance is a student's competence in the basic sciences as measured by his GPA in this area and the MCAT scores. Although the faculty member who interviewed plaintiff recommended him, the senior members of the Admissions

Committee determined that his science grades were unaccept-able. Insofar as the Chairman could remember, no student ever admitted had such low grades in the sciences. Defendant does not claim that his science grades were actually higher. Nor does he claim that the defendant medical school set higher standards for him than others. Both plaintiff and the dissent cite the fact that plaintiff was called for an interview rather than summarily eliminated from consideration on the basis of his grades. In this regard, it should be noted, he was one of the 30% of the applicants to be interviewed. While plaintiff characterizes the 30% who were called for an inter-view as a small number, the reality is that more than twice the number of students accepted were interviewed. The dis-sent, in our view, places undue emphasis on plaintiff's plead-ing allegation that he met all the admission standards. Plainly he did not. While factual averments of a complaint must be taken as true on a motion to dismiss for legal insufficiency, a pleader's bare legal conclusions need not. *(Roberts v Pollack,* 92 AD2d 440, 444.)

Accordingly, without considering the truth or falsity of gratuitous hearsay statements (one of which was categorically denied by its would-be author) allegedly indicating that plain-tiff's rejection was a result of age discrimination, it is appar-ent that plaintiff is not "otherwise qualified" within the meaning of the statute. In cases such as this we do well to remember that in matters of academic judgment courts are limited in their review to the issue of whether the institution has acted in good faith or irrationally or arbitrarily. *(Matter of Olsson v Board of Higher Educ.,* 49 NY2d 408; *Tedeschi v Wagner Coll.,* 49 NY2d 652.)

Clearly, the determination to reject plaintiff was not irra-tional. Thus, the complaint was properly dismissed. Concur—Sullivan, J. P., Milonas, Rosenberger and Ross, JJ.

Smith, J., dissents in a memorandum as follows: I believe that a question of fact exists as to whether the defendant was "otherwise qualified" pursuant to Executive Law § 296 (4) and that defendant's motion to dismiss was erroneously granted. I therefore dissent.

By summons and complaint dated August 15, 1989, plaintiff brought this age discrimination action pursuant to article 15 of the Executive Law and section 313 (3) (a) of the Education Law. Plaintiff, age 53, alleges that he was denied admission to the Albert Einstein College of Medicine (AECOM) because of his age.

Plaintiff is seeking injunctive relief, special and compensatory damages and attorneys fees. In lieu of an answer, defendant moved for an order pursuant to CPLR 3211 (a) (7) dismissing the complaint for failure to state a cause of action or, in the alternative, pursuant to CPLR 3211 (c) dismissing the complaint because there are no triable issues. The IAS court granted the motion, concluding that the plaintiff had failed to exhaust his administrative remedies pursuant to section 313 (5) of the Education Law* and had failed to state a cause of action pursuant to section 296 (4) of the Executive Law in that he did not allege or show that he was an "otherwise qualified" student for admission. In my view the record clearly belies these findings and conclusions.

Plaintiff applied for admission to AECOM as a first year medical student in the graduating class of 1993. Plaintiff obtained a BA degree in physics from Rice University in 1957. Plaintiff's grade point average (GPA) in the basic sciences (biology, chemistry, physics and mathematics) was 1.98 on a four point scale in which 2 is a C. His overall GPA was 2.09. In 1964, he received a MA degree from Columbia University. Plaintiff holds a Ph.D. degree in psychology from the City University of New York. Plaintiff is employed as a Senior Psychologist at Rockland Psychiatric Center and has produced a weekly cable television program on mental health. In addition, plaintiff, clearly an accomplished individual, has an IQ of 159 and scored in the 99th percentile on the Advanced Graduate Record Examination.

According to an affidavit submitted by the chairman of AECOM's Admissions Committee, William Caspe, M.D., the plaintiff was one of over 3,800 applicants. However, the first year class is limited to 176 students. Some 565 students are accepted to account for individuals who will select another school. Therefore, 85% of the applicants are rejected. The affidavit also asserted that the average GPA in the basic sciences of those students accepted by AECOM was 3.5 (B+/A−). This group's average overall GPA was 3.4 (B+). The affidavit alleged that the defendant's grade point average in the basic sciences was significantly lower than that of other students admitted to AECOM. It noted that plaintiff had not taken a basic science course in over thirty years. Further the affidavit stated that plaintiff's Medical College Admission Test (MCAT) score "was significantly below average for accepted

---

* This branch of the IAS order is not being appealed.

AECOM students." Defendant did not produce any documentary evidence substantiating these statistical assertions.

In light of his age, or the fact that he claims to be part Native American, plaintiff was afforded "minority" status. He was interviewed by AECOM's chairperson of the Committee on Minorities, Dr. Makman. Both Dr. Makman and said committee recommended that plaintiff be accepted. Despite this recommendation, the Admissions Committee denied the application.

In plaintiff's affidavit, it is alleged, *inter alia,* that Dr. Makman discouraged plaintiff from re-applying, stating that his qualifications were not the issue, but rather that the Admissions Committee "felt that the school's resources would be better utilized in training someone not in your position." Plaintiff also alleges that he was advised by another faculty member, Cedric Raine, Ph.D., that AECOM would not accept anyone over the age of 47. There was no affidavit from Dr. Makman, but Dr. Raine did deny the allegation in his affidavit. However, in his affidavit, Dr. Raine did state that, in a general conversation not related to AECOM, he said "there might be difficulty for a 53 year old person in applying to medical school."

In dismissing the complaint the motion court stated that plaintiff had not adequately alleged that he was "otherwise qualified", and determined the factual issue of whether plaintiff was "otherwise qualified" before an answer was served and prior to any discovery. Specifically, the motion court stated the following:

"The plaintiff's complaint also fails with regard to the Executive Law § 296 (4) which states:

'It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be nonsectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities *to any person otherwise qualified,* by reason of his race, color, religion, disability, national origin, age or marital status.' [Emphasis added.]

"The plaintiff has failed to establish that he is at all qualified pursuant to AECOM's published entrance requirements, but instead has attempted to establish his own entrance requirements based on his high I.Q. and good graduate record exam score. The plaintiff has chosen to ignore his extremely poor performance in the basic sciences and in undergraduate work in general and has failed to allege that

AECOM, or any other medical school, has accepted students with similar grades. This court is unconvinced that the plaintiff, pursuant to the Executive Law, has alleged or shown that he is an 'otherwise qualified' student, especially in light of the court's reluctance to interfere in controversies involving academic standards *(Matter of Olsson v Board of Higher Educ. of City of N.Y.,* 49 N.Y.2d 408)."

Contrary to the motion court's conclusion that plaintiff has not adequately alleged that he was "otherwise qualified", plaintiff did so allege. In paragraph 4 of the complaint, plaintiff alleged, "Plaintiff BROWN met all the admission standards". In paragraph 9 plaintiff alleged, "Upon information and belief, plaintiff BROWN was treated fundamentally different than similarly situated younger applicants and that but for plaintiff's age he would have been accepted as a first year medical student."

Plaintiff by affidavit alleged that the chairperson of the Committee on Minorities had informed him that there was no issue of his qualifications but there was an issue with respect to his age. While the Chairperson of the Admissions Committee contended that plaintiff was not "otherwise qualified" and there was no issue of age, plaintiff stated that the said Chairperson had told him that the school never admitted persons over 47 years of age.

Plaintiff's contention that he met all admission standards was supported by the admitted facts that he was interviewed by the Committee on Minorities and recommended for admission. Although this recommendation is neither dispositive of plaintiff's claim nor was it binding upon AECOM and the courts, it is some indicia of the plaintiff's qualifications.

It is well settled in the law that "a complaint should not be dismissed on a pleading motion so long as, when the plaintiff is given the benefit of every possible favorable inference, a cause of action exists." *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 634 [1976].) Affidavits may properly be considered in this process. Where there is a reasonable chance, even if some think it small, that plaintiff will prevail on the merits, the motion should be denied. *(Rovello v Orofino Realty Co., supra.)* The complaint alleged the following: (1) that the plaintiff applied for admission to AECOM; (2) that he was 53 years old and defendant knew this; (3) that he met all admission standards; (4) that he was interviewed and recommended for admission by the Committee on Minorities; (5) that he was denied admission; (6) that he was advised by the chairperson of the Committee on Minorities that he was rejected because

the school's resources would be better utilized by training a person not in his position; and (7) that he was advised of an unwritten age cut-off policy of age 47.

Whether plaintiff was, in fact, otherwise qualified is and remains an issue of fact. Defendant has presented no documentary evidence to substantiate that plaintiff was unqualified. The data from which the science and overall GPA's were computed was not submitted. Dr. Caspe's recollection that AECOM had not admitted anyone with such a low science GPA was not corroborated with documentation. No statistics were offered and no documentary evidence was presented with respect to similarly situated younger applicants. The plaintiff's MCAT score was not given nor was it specifically compared to that of other students who had been admitted. Until such evidence is forthcoming, which would occur through discovery which has not been had herein, an issue of fact remains as to whether plaintiff was "otherwise qualified." Moreover, plaintiff has alleged that he can provide evidence through the testimony of Drs. Makman and Raine that will substantiate his claim. There is no counter to plaintiff's claim regarding Dr. Makman and the Raine affidavit simply creates a problem of credibility, a factual issue.

Nevertheless, the majority has concluded that plaintiff "has not shown that he has a cognizable cause of action, since the *undisputed facts* indicate the his academic performance was below the accepted standard for admission to the defendant medical school." (Emphasis added.) Those "undisputed facts" have not been substantiated and without discovery plaintiff will have no opportunity or possibility of disputing them. More importantly, it will be through the disclosure of defendant's records and statistics that plaintiff's allegations will be confirmed or refuted. "[D]iscrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually be devious and subtle means" *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 183 [1978]; *Matter of New York City Bd. of Educ. v Batista,* 54 NY2d 379, 383 [1981]). Indeed, " '[s]tatistics are valuable and often demonstrate more than the testimony of witnesses' in showing that discrimination has occurred". *(Matter of New York City Bd. of Educ. v Batista, supra,* at 383.) Consequently, dismissal at this juncture is premature.

Therefore, plaintiff has adequately stated a cause of action for age discrimination against AECOM. *(See, Guggenheimer v Ginzburg,* 43 NY2d 268 [1977].)