OPINION OF THE COURT
John T. Buckley, J.
PRIOR PROCEEDINGS AND PENDING MOTIONS
Plaintiffs, shopping center landlords, commenced this action in February of this year seeking the equitable protection of this court to prevent defendants, 30-year tenants, from carrying out a threatened shut-off of water to two other tenants. Defendants have responded that they have been converted into unwilling water suppliers to two other tenants, one of which is a laundromat, due to the actions of plaintiffs over the past two decades. At the behest of plaintiffs, this court, without requiring any bond, enjoined defendants during the past eight months while all concerned parties, including the two other tenants, have attempted to resolve the underlying disputes. Since the parties have been unable to arrive at a mutually agreeable negotiated settlement, the court is required to address the motion of the plaintiffs for a preliminary injunction *656 as well as a motion of the defendants for partial summary judgment.
Plaintiffs obtained a temporary restraining order from this court on February 8th which order enjoined defendants from terminating the supply of water into the shopping center "pending the hearing and determination” of a motion for a preliminary injunction. The application for the temporary restraining order was supported by affidavits and a verified complaint which grounded the plaintiffs’ entitlement to equitable relief upon the assertion that the defendants’ lease obligations precluded their ability to control the water supply to the two other tenants although it was undisputed that defendants had, without their knowledge or consent, paid for all water consumed by all tenants during the past two decades since there had only been one water line and they were the only metered customer. (Verified complaint ¶¶ 6, 7, 8, 10 [seventh paragraph of lease obligates defendants to maintain and repair, plaintiffs to be held harmless from defendants’ failure to maintain and repair, and water is supplied by one line]; Rosedale affidavit ¶ 5, Feb. 8, 1995 [dispute arose when it was "discovered” that all the water supplied to shopping center had been metered to defendants]; Ravitz affidavit ¶ 4, Feb. 8, 1995 [threatened water termination based upon defendants’ unpaid claim for $80,000 representing 18 years of water usage and demand for separate water line].) Plaintiffs alleged that they were likely to prevail on the merits of their claim that the lease required defendants to refrain from shutting off water to the other two tenants, that irreparable and grave harm would be caused since termination of water would impede firefighting and pose a public health threat should an ill person require water to drink, and that a balancing of equities weighed in plaintiffs’ favor since the single water line was now separately metered for each tenant yet defendants persisted in their demands for separate water lines.
Plaintiffs filed and served an amended pleading in June which refined the articulation of their claims while essentially seeking the same relief upon the same theories. Plaintiffs have asserted eight causes of action:
(1) since the lease requires defendants to maintain the premises and associated structures in good and safe working order, there exists an actual dispute as to whether defendants have the right to terminate the "Center’s water supply”;
(2) since termination of the water supply violates the seventh and eighth paragraphs of the lease which imposes a mainte *657 nance and repair obligation upon defendants as to the water line, the threatened termination constitutes an anticipatory breach of contract entitling plaintiffs to damages and relieves plaintiffs of any further lease obligations to defendants;
(3) since plaintiffs have an obligation to provide each of the other two tenants with water, defendants’ threat to terminate the "Center’s water supply” constitutes tortious interference with contractual relations entitling plaintiffs to a damage remedy;
(4) since plaintiffs have an obligation to provide each of the other two tenants with water, defendants’ threat to terminate the "Center’s water supply” constitutes tortious interference with contractual relations for which there is no adequate remedy at law entitling plaintiffs to injunctive relief;
(5) defendants have breached the covenant of good faith and fair dealing which is implied in their lease;
(6) since the lease requires defendants to maintain the premises and associated structures in good and safe working order, and since there is now a leak in the sole water line which supplies the shopping center which defendants have not repaired, plaintiffs are entitled to damages;
(7) since the lease requires defendants to maintain the premises and associated structures in good and safe working order, and since there is now a leak in the sole water line which supplies the shopping center which defendants have not repaired, plaintiffs are entitled to injunctive relief requiring the repair as there is no adequate remedy at law;
(8) since defendants have permitted a leak to continue without repair, defendants have breached their lease by engaging in waste, entitling plaintiffs to a damage remedy.
Plaintiffs’ motion for preliminary injunctive relief, although primarily argued as based upon the first cause of action, can also find support in the fourth and seventh causes of action, and the court, in reviewing plaintiffs’ motion, has canvassed any discernable basis upon which the requested relief can be granted. The court has been especially careful in reviewing the motion for preliminary injunctive relief since plaintiffs have alleged that they have a clear right to relief based upon a property interest created by lease and since plaintiffs have vigorously asserted that irreparable harm would be necessarily caused if this court does not grant a preliminary injunction.
Defendants moved by notice dated February 24, 1995 for partial summary judgment on their claim that they are *658 entitled to terminate the water supply to the other tenants and for a dismissal of plaintiffs’ second and third causes of action then set forth in the original verified complaint. Insofar as the second and third causes of action in plaintiffs’ original complaint were based upon an alleged obligation imposed upon defendants by the seventh and eighth paragraphs of the lease, the court has reviewed the first four causes of action of plaintiffs’ verified amended complaint for the dismissal sought by defendants. To the extent that the court must interpret or construe the lease to ascertain whether defendants are precluded from terminating water service to tenants added to the single water line or whether defendants are obligated to maintain and repair the entire water line if used to provide water service to tenants other than themselves, the court must necessarily decide whether plaintiffs have stated causes of action. Since there has as yet been no discovery and considering the current posture of this litigation, the court declines to rule on a partial summary judgment motion but will, pursuant to CPLR 3211 (a) (7), determine whether plaintiffs have pleaded causes of action on the first four claims asserted in their verified amended complaint at paragraphs 34 through 38, 39 through 43, 44 through 53, and 54 through 62. Having determined whether plaintiffs have stated causes of action, the court will then turn to plaintiffs’ motion for preliminary injunctive relief and conclude with a brief summary.
This decision will not explicitly deal with the final four causes of action in the plaintiffs’ verified amended complaint— except to the extent that the seventh cause of action may support the application for a preliminary injunction — since the parties have not fully briefed either the good-faith covenant of the lease or the cause of, extent of, or repair costs of the alleged leak.
defendants’ obligations to maintain and repair
Plaintiffs claim that the lease between them and defendants, first executed in 1963 and periodically renewed since then, imposed an obligation upon the defendants to maintain and repair which extends to the single water line furnishing water to all tenants in the shopping center. The seventh paragraph of that lease provides, in relevant part: "Tenant shall, at Tenant’s own cost and expense, keep and maintain in repair and good order and safe condition the building and improvements standing upon the demised premises at the commencement of the term hereof or thereafter erected upon the demised *659 premises, or forming part of the demised premises, and their full equipment and appurtenances, and each and every part thereof both inside and outside, structural and nonstructural, extraordinary and ordinary, and shall repair the whole and each and every part thereof in order to keep the same at all times during the term hereof in repair and good order and safe condition, howsoever the necessity therefor may occur and shall use all reasonable precaution to prevent waste, damage or injury.”
This provision does not explicitly place the obligation for maintenance and repair of water lines upon defendants. This provision does not explicitly or implicitly create an obligation for maintenance and repair of buildings, improvements, full equipment or appurtenances leased to other tenants upon defendants. In light of the circumstances surrounding the original lease and the subsequent erection and undisclosed diversion of water, this provision cannot be read to implicitly place any obligation for maintenance and repair of water lines beyond defendants’ own need for a water supply.
At the time when the lease was originally drawn, the defendants received water through their own pipeline with separate metering. The extension of that separate line to the buildings now occupied by two other tenants was accomplished, presumably at the direction of and with the active involvement of plaintiffs, more than a decade after the original lease was drafted and signed. It could not have been the intent of the parties to create an obligation for maintenance and repair of a water line to service future tenants under these circumstances. Plaintiffs’ counsel does not advance that argument as such since it is clearly unsupportable and yet that is the specific obligation which this court would have to find to support the relief sought by plaintiffs on the first four causes of action. An obligation assumed by lease must have been one capable of being apprehended and appreciated by defendants. There is simply no language in this lease which explicitly or implicitly would inform a reasonable person that defendants were assuming a maintenance and repair duty to other tenants as yet unknown, in buildings as yet unbuilt, engaging in businesses with unpredictable water needs.
While it may be theoretically possible to construe the seventh paragraph of the lease as placing an obligation on defendants with respect to the single water line from its water main connection to the building leased by defendants, there is simply no basis from the language of the lease upon which to *660 impose or from which to derive an obligation requiring defendants to become de facto water suppliers to other tenants. Should this court construe the lease as obligating defendants to maintain and repair this single water line after it passes the building leased by defendants in locations where it only serves third parties, the court would be imposing a new duty and, in effect, redrafting the lease. (Rodolitz v Neptune Paper Prods., 22 NY2d 383, 386-387 [1968].)
The dramatically changed use to which that single water line has been put during the past two decades must also be considered in terms of any obligation defendants might be deemed to have with respect to the single water line from its water main connection to the building leased by defendants. It is not reasonable to conclude that defendants bargained for a water line on which they would be a secondary user but for which they would be solely responsible for maintenance and repair. Defendants simply did not know about this single-line sole-meter arrangement providing service to multiple tenants until 1993 when it was "discovered” inadvertently. While plaintiffs consistently insist upon their lack of knowledge until 1993 about the single-line sole-meter arrangement providing service to multiple tenants, plaintiffs themselves apparently constructed the extension to the single line and even operated a laundromat prior to the current tenants. Apparently, so long as the defendants continued to pay for all of the water supplied through the single line, neither the plaintiffs nor the other tenants were particularly concerned about who had been paying or who should pay for the water.
DISMISSAL OF FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION
Since there is no obligation of maintenance and repair as described by plaintiffs within the lease as originally drafted and signed, the amended verified complaint fails to state causes of action against defendants on the first, second, third and fourth causes of action. In arriving at this conclusion, this court is mindful that a dismissal under CPLR 3211 (a) (7) is not granted unless it has been conclusively demonstrated that the plaintiff does not have a cause of action. (Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976].) Since this court has considered material extraneous to the plaintiffs’ complaint and has been primarily involved in construing the language of a lease to ascertain the existence and extent of any legal obligations assumed by defendants, the proper inquiry on a motion *661 under CPLR 3211 (a) (7) is whether the pleader has a cause of action and not whether one has been stated. (Mary Imogene Bassett Hosp. v Hospital Plan, 89 AD2d 240, 243 [4th Dept 1982].) Although the court would normally afford a plaintiff the benefit of any conceivable doubt and be careful to draw any inferences favorable to the plaintiff where, as here, "allegations consisting of bare legal conclusions as well as factual claims either incredible or flatly contradicted by documentary evidence are not entitled to such consideration.” (Roberts v Pollack, 92 AD2d 440, 444 [1st Dept 1983].)
APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF
Courts in New York have no inherent power to grant injunctions in the absence of an authorizing statute. (Bachman v Harrington, 184 NY 458 [1906].) CPLR 6301 provides courts with such authorization but only to the extent that the exercise of judicial discretion comports with a statutory scheme that imposes grounds for relief and safeguards for the party against whom such an order would issue. (Uniformed Firefighters Assn. v City of New York, 79 NY2d 236, 239 [1992].) "[B]ecause preliminary injunctions prevent the litigants from taking actions that they are otherwise legally entitled to take in advance of an adjudication on the merits, they should be issued cautiously and in accordance with appropriate procedural safeguards.” (Uniformed Firefighters Assn. v City of New York, supra, at 241 [citations omitted]; see generally, 7A Weinstein-Korn-Miller, NY Civ Prac ¶¶ 6301.05 [nature of preliminary injunction and potential for abuse], 6301.14-6301.24 [elements of discretion in considering application for preliminary injunctive relief].)
To prevail on a motion for a preliminary injunction, the movant must demonstrate: (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that a balancing of the equities favors the movant’s position. (Grant Co. v Srogi, 52 NY2d 496, 517 [1981]; City of Buffalo v Mangan, 49 AD2d 697 [4th Dept 1975].) Plaintiffs’ application has failed to demonstrate any of the three essential predicates for preliminary injunctive relief.
A demonstration of likelihood of ultimate success on the merits in this case would depend upon plaintiffs’ showing that defendants are breaching a lease obligation or a duty otherwise founded in law by threatening or actually terminating the "Center’s water supply.” Defendants have no such lease obligation nor such legal duty. As this court has already ascertained, plaintiffs are mistaken when they claim that defendants have *662 a lease obligation to maintain or keep in good repair the water line which provides them with a water supply to the extent that it also services other tenants. Additionally, no party has argued and the court has been unable to locate any authority for a legal duty based upon statute, regulation or case law which would impose such an obligation upon defendants in this type of case. (Town Law § 198 [3] [a] [property owner is responsible for supply pipes connecting with district mains]; Public Service Law § 89-b [3-b] [restrictions on methods of termination of service for nonpayment only apply to waterworks corporation]; Hasenoehrl Leasing v Town of Hamburg, 182 AD2d 1091 [4th Dept 1992] [property owner is responsible for expense of installing and maintaining service line]; Matter of Christie v Phoenicia Water Dist., 194 AD2d 912 [3d Dept 1993] [Town Law § 277 mandates that owner be required to install water service as condition of subdivision approval].)
With respect to a demonstration of irreparable harm, plaintiffs have claimed that failure to issue a preliminary injunction would (1) create a fire risk, (2) pose a public health problem, and (3) threaten the economic viability of the two other tenants who depend upon the single water line which was "discovered” in 1993. Although plaintiffs advanced the first argument in a February affidavit of counsel, their error in assuming that the sprinkler system was dependent upon the single water line was later corrected in their amended verified complaint. Defendants have since also made it clear that they do not intend to create a fire risk by terminating water in a separate dedicated water line. The court is also unconvinced about the presumed public health problem if defendants should "terminate” water service. Other than an unsubstantiated allegation in an affidavit of plaintiffs’ counsel, there is simply no evidence upon which to assume such a consequence.
The court is, however, especially concerned about the evident and immediate impact which a "termination” of water service by defendants would have upon both Beneficial New York and Turnpike Laundromat. Both tenants have a clear need for water service. The obligation to ensure that water service is available appears to rest, however, upon the plaintiffs. It is manifestly unfair to continue the effects of a surreptitious diversion of water which began over 18 years ago by requiring defendants to maintain and repair a water line on which they have been and would remain only a secondary user. The court was willing to afford the tenants the protection of the temporary restraining order, without the posting of a bond by *663 plaintiffs or Beneficial New York or Turnpike Laundromat, beginning last February in the middle of winter and under circumstances when it could have been argued that defendants might have some type of obligation vis-a-vis the single water line. Having maintained the "status quo” for some eight months, having now determined that defendants have no obligation to the other tenants with respect to the single water line and it now appearing that plaintiffs have been attempting to avoid their own obligation to all of these tenants, this court cannot view any prospective harm as being "caused” by defendants.
The final factor in consideration of a preliminary injunction, balancing of the equities, clearly favors the defendants for many of the same reasons already identified. Defendants have no obligation to the other tenants. Plaintiffs, as property owners, appear to be responsible as a matter of law as well as lease obligation to the other tenants to ensure that water service is available. Plaintiffs have strenuously argued that the installation of submeters, shortly after the "discovery” of the water diversion, should somehow entitle them to injunctive relief. Defendants cannot be now compelled to accept an indeterminate liability for maintenance and repair simply because prospective billing problems have been (arguably) resolved. The attempt by plaintiffs to now foist upon defendants an expansive maintenance and repair liability only serves to underscore the inequitable behavior which created the need to resolve the problems inherent in a single line. This parallels plaintiffs’ creative interpretation of "demised premises” which would have to result in defendants’ assumption of other as yet unimagined liabilities. Given this court’s inability to find the essential predicate obligation of defendants to maintain and repair the single line, it has been unnecessary at this stage to consider the application of the "clean hands” doctrine. Even were the court to be able to construe the lease to include a broader maintenance and repair obligation, a fact-finding hearing would be necessary to more closely examine the method by which the single water line was extended to the other tenant locations unbeknownst to the defendants.
CONCLUSION
After reviewing the papers identified in Appendix A, this court having found that there is no lease or legal obligation by which defendants could be required to maintain and repair water service through the existing single line for the benefit of *664 other tenants of plaintiffs, it is hereby ordered that plaintiffs’ motion for a preliminary injunction is hereby denied in all respects, and it is further ordered that defendants’ motion for dismissal of plaintiffs’ causes of action is hereby granted with respect to the first, second, third and fourth causes of action of the amended verified complaint, and it is further ordered that the temporary restraining order issued by this court on February 8, 1995 shall be dissolved as of October 20, 1995.