■ KEVIN WALTZER, Respondent, v TRADESCAPE & Co., L.L.C., Formerly Known as C.S. BLOCK & Co., L.L.C., et al., Defendants, and OMAR AMANAT et al., Appellants. [819 NYS2d 38]—

Judgments, Supreme Court, New York County (Richard B. Lowe, III, J.), entered October 5, 2004, in favor of plaintiff and against defendants Sharif Amanat and Omar Amanat in the sum of $6,665,210, and January 11, 2005, in favor of plaintiff and against defendant Market XT Holding Corp., also known as Tradescape New York, LLC, also known as C.S. Block New York, LLC, also known as Tradescape Corp., and T. Corp. in the sum of $6,725,375.15, which, insofar as appealed from as limited by the briefs, bring up for review orders of the same court and Justice, entered December 5, 2003, directing the production of certain documents; December 19, 2003, striking defendants' answer pursuant to CPLR 3126 and referring the issue of damages to a referee to "hear and determine"; and order (denominated a judgment) of the same court (Special Referee Lance Hewitt), entered September 27, 2004, which determined the amount of damages against the Amanat defendants and directed entry of judgment; and order, same court and Justice, entered December 22, 2003, insofar as it issued an order of attachment of certain of defendants' assets, unanimously reversed, on the law, without costs, the judgments and order of attachment vacated, and the matter remanded for a hearing on damages.

The willful and contumacious character of defendants-appellants' failure to produce the Amanats' personal documents and documents in the possession of two law firms that had formerly represented defendants can be inferred from their noncompliance with six separate court orders directing document production coupled with inadequate excuses for those defaults. A complete failure to disclose is not a prerequisite to the imposition of sanctions pursuant to CPLR 3126, the relevant factor being whether the failure to disclose relevant documents at issue was willful and contumacious. Here, the production of 5,000 pages of documents cannot be considered "substantial" when the documents in the possession of the Liddle firm alone were over 160,000 pages, there was an unknown number of documents in the hands of the Orrick firm, and no personal documents of the Amanats were produced. Furthermore, the motion court observed that a lesser sanction than striking defendants' answer would hurt plaintiff and repeatedly warned defendants that noncompliance would lead to the striking of their answer.

Defendants argue that their failure to comply with the court orders directing production of the documents at issue was not willful or contumacious and that the motion court abused its discretion in striking their answer because the Orrick documents related to matters unconnected to this action and were not in their possession and control due to Orrick's retaining lien, and that, because of plaintiff's refusal to consent to automated discovery of electronically stored evidence at a cost of $5,000 and his insistence on review of such evidence by Liddle, they cannot afford the $40,000 cost of producing such documents.

As to the Orrick documents, on May 28, 2003, the court ordered that plaintiff's subpoena to Orrick would be honored and that "[t]he defendant will work out the defendant's problems in responding to those subpoenas accordingly but those subpoenas are enforceable and will be enforced." Defense counsel stated that he hoped Orrick would allow him to review the documents and produce the relevant documents and that he may have to come back to court "seeking an order from you directing to allow me to do that." However, defendants never worked things out and never moved to compel Orrick to produce the documents in its possession. Thus, the solution presently suggested, i.e., that the court should have ordered Orrick to produce the documents to plaintiff with the proviso that they be shown to defendants only at their depositions or trial, was not raised or sought from the motion court.

As to the Liddle documents, defendants are correct that, as a general rule, under the CPLR, the party seeking discovery should bear the cost incurred in the production of discovery material; however, here we are not dealing with the retrieval of deleted electronically stored material, the data sought was on two CDs and readily available. The cost of copying and giving them to plaintiff would have been inconsequential. The cost of an examination by defendants' agents to see if they should not be produced due to privilege or on relevancy grounds should be borne by defendants (compare *Samide v Roman Catholic Diocese of Brooklyn*, 5 AD3d 463 [2004] [agreed by counsel for plaintiff that all costs related to the recovery of defendants' hard drive data were to be borne solely by the plaintiff in order to ascertain whether any relevant e-mails that were deleted could be retrieved]). Here, when the parties disagreed as to the form of discovery of the two CDs containing the 161,000 pages, defendants could and should have asked the court to resolve the issue.

Accordingly, inasmuch as it appears that defendants at-

tempted to use the Orrick lien and Liddle fee demand to their advantage to avoid discovery, the striking of their answer was warranted.

After defendants' answer was stricken, the court entered an order pursuant to CPLR 6201 (3) attaching 2,350,010 common shares of E*Trade stock owned by defendants and a Manhattan apartment and Queens house owned by defendant Omar Amanat. However, although the striking of defendants' answer sufficed to establish plaintiff's likelihood of success on the merits (*see* CPLR 6212 [a]), where the attachment was for security purposes alone, plaintiff also needed to show fraudulent intent, which is not lightly inferred, and affidavits raising mere suspicions of an intent to defraud are an insufficient basis for an attachment (*see Shisgal v Brown*, 3 AD3d 434 [2004]). Here, there was no showing by plaintiff that Omar Amanat intended to fraudulently transfer his real property.

As to the E*Trade stock, the basis of the attachment request was that defendants had transferred the previous 7,050,032 shares that had been released from lockup, and would do the same with the shares that were about to be released in late December. However, the earlier distribution by defendants was to "shareholders, such as Softbank" and there was no showing that it was for a fraudulent purpose. As to the contention that defendants had stated that they had already encumbered or pledged the soon to be released shares, plaintiff's conclusion that "if [defense counsel]'s remarks are true, it shows the defendants have no aversion to encumbering the E*Trade Stock and it is reasonable to conclude that they will, unless prevented, further pledge the E*Trade Stock," is speculative and does not suffice to establish an intent to defraud. Accordingly, the order of attachment is vacated.

Finally, the referee correctly ruled that defendants were "precluded from offering any evidence at the inquest," while permitting them to rebut plaintiff's proof with any evidence in the record (*see Langer v Miller*, 281 AD2d 338, 339 [2001]). Nevertheless, where, as here, the damages sought are not a sum certain which can be determined by computations, "the defaulting defendant must be given ' "a full opportunity to cross-examine witnesses, give testimony and offer proof in mitigation of damages" ' " (*Conteh v Hand*, 234 AD2d 96 [1996] [citations omitted]). Here, given the preclusion order, without an opportunity to cross-examine, there was little defendants could do to challenge plaintiff's proof, which, as accepted by the referee, was based on the questionable JWC valuation. Accordingly, the matter is remanded for a new inquest at which defendants may

cross-examine plaintiff's witnesses. Concur—Andrias, J.P., Saxe, Sullivan, Williams and McGuire, JJ.