Order, Supreme Court, New York County (Ira Gammerman, J.H.O.), entered May 3, 2010, which denied defendants’ motion to compel the James Mintz Group (Mintz) and Andrew B. Melnick to comply with subpoenas, unanimously modified, on the law and the facts and in the exercise of discretion, the motion granted to the extent of (1) requiring Mintz and Melnick to produce (a) documents prepared in the ordinary course of the. New York Palace Hotel’s business and video surveillance tape's that were turned over to Mintz, which plaintiffs have not already produced, (b) documents showing the identity of witnesses interviewed by Melnick, and (c) documents showing what Mintz found in Zaman’s office, whether an inventory was made, and what happened to the materials, and (2) permitting Melnick to be deposed about these topics and the collection and mainte *919 nance of electronic evidence from the Hotel, and otherwise affirmed, without costs.
Order, same court and J.H.O., entered June 15, 2010, which granted (1) plaintiffs’ motion to dismiss the 5th and 12th through 17th counterclaims as against all plaintiffs and the 6th through 11th counterclaims as against plaintiff Duli Yang Teramat Mulia Paduka Seri Pengiran Digadong Sahibul Mai Pengiran Muda Haji Jefri Bolkiah (Prince Jefri) and (2) third-party defendants’ motion to dismiss the third-party claims, unanimously modified, on the law, so much of the order dismissing the 5th counterclaim and 6th third-party claim stricken and replaced with a declaration that defendant Zaman is not entitled to indemnification under a June 1, 2004 letter she sent to the royal family of Princess Jefridah Mohammed Louis, so much of the order as dismissed the 13th counterclaim and the 2nd and 4th third-party claims stricken and replaced with a declaration that defendants/third-party plaintiffs Zaman and Thomas Derbyshire are not entitled to indemnification under the Indemnity Agreements & Undertakings signed by Prince Jefri, third-party defendant Pengiran Muda Abdul Hakeem (Prince Hakeem) and third-party defendant Pengiran Muda Bahar (Prince Bahar), and otherwise affirmed, without costs.
Order, same court and J.H.O., entered July 1, 2010, which declined to approve a letter rogatory seeking documents from and the deposition of the Brunei Investment Agency (BIA), placed limits on letters of request seeking documents from and the depositions of Richard Chalk, Lindsay Marr, Claire Kelly, also known as Madame Salma, Christopher Grierson, David Sandy and Anna Dilnot, denied defendants’ request for a forensic examination of the hotel’s computers to see if any documents had been deleted, and refused to order the hotel to make its November 2006 backup tape available for review, unanimously modified, on the facts and in the exercise of discretion, the letter rogatory authorized to the extent of asking BIA for documents evidencing its prior written consent to Zaman’s employment contract, Derbyshire’s contract with Gilt Management LLC, the subleases that plaintiff Amedeo Hotels Limited Partnership or the hotel granted to defendants Fitzjohn’s Holdings Inc. and Eurofinch Limited, the charges on Zaman’s and Derbyshire’s credit cards that plaintiffs allege were unauthorized, and the purchase of plasma televisions by Golden Twist Ltd., and otherwise affirmed, without costs.
The court properly dismissed defendants’ defamation claims. The allegations in the original complaint, filed in Cedar Swamp Holdings, Inc. et al. v Zaman et al. in the U.S. District Court for *920 the Southern District of New York, that Zaman and Derbyshire “profess to be English barristers” and “are little more than confidence artists posing as English lawyers,” were pertinent to the action. Therefore, they were protected by the judicial proceedings privilege (see e.g. Sexier & Warmflash, EC. v Margrabe, 38 AD3d 163 [2007]). “Whether a statement is ‘at all pertinent to the litigation’ is determined by an ‘extremely liberal’ test,” and “any doubts are to be resolved in favor of pertinence” (id. at 173 [citations omitted]).
Abusing the judicial proceedings privilege is the same as making impertinent statements (see Youmans v Smith, 153 NY 214, 220 [1897]). Since the complained-of statements were pertinent, the Cedar Swamp plaintiffs did not abuse the judicial proceedings privilege. Unlike Halperin v Salvan (117 AD2d 544 [1986]), this is not a case where the plaintiffs in the first lawsuit (the one in which the allegedly defamatory statements were made) failed to move forward with it (see Lacher v Engel, 33 AD3d 10, 14 [2006]), or where the first lawsuit was a “sham,” brought “for the sole purpose of defaming [the] adversary” (Sexter, 38 AD3d at 172 n 5).
The exception to Civil Rights Law § 74 set forth in Williams v Williams (23 NY2d 592 [1969]) does not apply here. “Williams is inapplicable ... in the absence of any allegation that the District Court action was brought maliciously and solely for the purpose of later defaming” defendants (Branca v Mayesh, 101 AD2d 872, 873 [1984], affd 63 NY2d 994 [1984]).
The court properly denied defendants’ motion for leave to amend their claims. The statute of limitations for libel and slander is one year (CPLR 215 [3]). It starts to run on the date of publication, so “the fact that the libel may not have been discovered until later matters not” (Fleischer v Institute for Research in Hypnosis, 57 AD2d 535 [1977]). Plaintiffs’ alleged delay in producing documents does not create an equitable estoppel (compare Ross v Louise Wise Servs., Inc., 8 NY3d 478, 491 [2007], with General Stencils v Chiappa, 18 NY2d 125 [1966]). Except for the October 2007 complaint to the UK Bar Council or the UK Bar Standards Board, which defendants mentioned in their prior pleading, the amended claims relate back to neither the prior pleading nor defendants’ original pleading (see Williams v Varig Brazilian Airlines, 169 AD2d 434, 437 [1991], lv denied 78 NY2d 854 [1991]). The complaint to the Bar Standards Board was protected by the judicial proceedings privilege (see Wiener v Weintraub, 22 NY2d 330, 331-332 [1968]).
The court properly denied defendants’ motion to add claims *921 for prima facie tort. These claims are based on the same facts and circumstances as defendants’ amended defamation claims (see Curiano v Suozzi, 63 NY2d 113, 118 [1984]). Defendants may not circumvent the judicial proceedings privilege by pleading prima facie tort (see Freihofer v Hearst Corp., 65 NY2d 135, 143 [1985]). Furthermore, claims based on the new statements added in the amended pleading are barred by the one-year statute of limitations for prima facie tort (see Havell v Islam, 292 AD2d 210 [2002]). Finally, defendants’ allegation that plaintiffs and third-party defendant Cedar Swamp were motivated solely by disinterested malevolence is contrary to other allegations in their amended pleading (see Meridian Capital Partners, Inc. v Fifth Ave. 58/59 Acquisition Co. LP, 60 AD3d 434 [2009]).
The court properly denied defendants’ claims for abuse of process. The elements of abuse of process are “(1) regularly issued process . . . , (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective” (Curiano, 63 NY2d at 116). Defendants themselves allege that the Cedar Swamp plaintiffs’ request for a temporary restraining order was denied. Therefore, process did not issue.
“[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused” (id.). Therefore, to the extent defendants’ abuse of process claims are based on the institution of this action and a UK action in connection with Cedar Swamp, they fail to state a cause of action.
If process has a legitimate purpose, the allegation that it was misused does not suffice to state a claim for abuse of process (see Roberts v Pollack, 92 AD2d 440, 445 [1983]). The notices of pendency filed by plaintiffs and the freezing orders that they obtained in the UK had a legitimate purpose.
It is true that a claim for abuse of process can be based on the misuse of a subpoena (see e.g. Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397 [1975]). However, defendants did not set forth facts indicating that plaintiffs used subpoenas for other than their proper purpose (see Zeckendorfv Kerry H. Lutz, PC., 282 AD2d 295 [2001]).
The court properly dismissed defendants’ malicious prosecution claims. Regardless of whether defendants adequately alleged malice, the Cedar Swamp action did not end in their favor. The amended Cedar Swamp complaint contained 23 state-law claims and one federal claim. The federal court dismissed the federal claim on the merits but dismissed the state-law claims for lack of subject matter jurisdiction, without prejudice (see *922 Cedar Swamp Holdings, Inc. v Zaman, 487 F Supp 2d 444, 453 n 62 [SD NY 2007]). A dismissal for lack of jurisdiction does not show lack of probable cause for the prior lawsuit (see Heaney v Purdy, 29 NY2d 157, 160 [1971]). Zaman v Amedeo Holdings, Inc. (2008 WL 2168397, 2008 Del Ch LEXIS 60 [2008]) does not require a contrary result. The Delaware court merely required the Derbyshires to have succeeded “on the merits or otherwise” in the federal and UK proceedings (2008 WL 2168397, *24, 2008 Del Ch LEXIS 60, *79 [emphasis added]). By contrast, New York law requires “an adjudication on the merits” in the previous action (see Roberts, 92 AD2d at 447).
The court properly dismissed defendants’ injurious falsehood claims. The elements of injurious falsehood are “essentially identical to slander of title” (Rosenbaum v City of New York, 5 AD3d 154, 155 [2004]). “[T]he filing of a notice of pendency does not give rise to a cause of action for slander of title” because “a notice of pendency is an ‘undeniably true statement’ ” (35-45 May Assoc, v Mayloc Assoc., 162 AD2d 389, 389-390 [1990]). The circumstances in Plot Realty LLC v DeSilva (45 AD3d 312 [2007]), as well as that complaint’s detailed pleading of special damages, differ from the case at bar.
Contrary to defendants’ assertion, the instant action is not one to enforce the consent order. Therefore, the motion court properly dismissed the indemnification claims arising out of the Indemnity Agreements & Undertakings signed by Princes Jefri, Bahar and Hakeem. However, the motion court should have made an appropriate declaration instead of dismissing the declaratory judgment claims (see e.g. Daly v Becker, 109 AD2d 651 [1985]).
The royal family of Princess Jefridah was not bound by the June 1, 2004 letter sent by Zaman because, by its terms, it was required to be signed, and Princess Jefridah did not sign it (see Scheck v Francis, 26 NY2d 466 [1970]). Again, with respect to the declaratory judgment claims, the motion court should have made an appropriate declaration instead of dismissing (see Daly, supra).
The motion court was mistaken in saying that defendants failed to oppose Prince Jefri’s motion to dismiss the 6th through 11th counterclaims. Prince Jefri’s argument that collateral estoppel does not apply because he was not a party in the Delaware action is unavailing. Collateral estoppel is not limited to parties; it also applies to those in privity with the parties in the prior action (see e.g. Buechel v Bain, 97 NY2d 295, 303 [2001]). Nevertheless, the Delaware court’s findings that Prince Jefri dominated his corporations does not preclude dismissal of the *923 6th through 11th counterclaims because “[e]vidence of domination alone does not suffice [to pierce the corporate veil] without an additional showing that it led to inequity, fraud or malfeasance” (TNS Holdings v MKI Sec. Corp., 92 NY2d 335, 339 [1998]).
The counterclaims allege that Prince Jefri has used his domination of Amedeo to transfer its assets to prevent satisfaction of any judgment entered against it in this case. However, “[t]he corporate form may not be disregarded merely because the assets of the corporation . . . are insufficient to assure the recovery sought” by the person seeking to pierce the corporate veil ("Walkovszky v Carlton, 18 NY2d 414, 419 [1966]).
Plaintiffs claim that defendants may not appeal the May 3 and July 1 orders because they failed to apply to the IAS court for review of the Special Discovery Master’s orders within five days after the orders were made (see CPLR 3104 [d]). However, plaintiffs do not claim that any of the Special Discovery Master’s decisions were entered, so CPLR 3104 (d) is not a bar to these appeals.
Based on defendants’ arguments on appeal, they no longer seek all the items they originally requested in the Mintz and Melnick subpoenas. The documents, video surveillance tapes and computer backup tapes that the hotel prepared in the ordinary course of business and turned over to Mintz are discoverable (see Stewart v Roosevelt Hosp., 22 AD2d 648 [1964]). However, the hotel’s counsel has stated that the backup tapes are in her custody, so defendants need not subpoena them from Mintz and Melnick.
In light of plaintiffs’ allegation that Zaman removed or destroyed a laptop and documents from her office at the hotel, defendants are entitled to discover what Mintz found in Zaman’s office, whether an inventory was made, and what happened to the materials. Moreover, plaintiffs stated below that they would not object to discovery of Mintz regarding its document collection work, as opposed to its investigative work. They have also stated that they have no objection to production by Mintz concerning its collection and maintenance of electronic data on their behalf.
The identities of the witnesses whom Melnick interviewed are not privileged (see Moore U.S.A., Inc. v Standard Register Co., 2000 WL 876884, *6, 2000 US Dist LEXIS 9137, *15-16 [WD NY 2000]), and could lead to relevant information.
Given the dismissal of defendants’ defamation and malicious prosecution claims, some of the information they seek (e.g., the factual bases for Melnick’s affidavits and plaintiffs’ claims, all *924 documents and testimony regarding Mintz’s investigation, and the extent to which a complete investigation was conducted) is no longer “material and necessary” (CPLR 3101 [a]). Furthermore, Melnick’s affidavits were privileged even though they were prepared for lawsuits other than the current case (see Corcoran v Peat, Marwick, Mitchell & Co., 151 AD2d 443, 445 [1989] ; see also Sands v News Am. Publ., 161 AD2d 30, 38 [1990] ), and Prince Jefri did not waive privilege—at his deposition, he did not say that he depended on Mintz or Melnick.
The depositions of Chalk, Marr, Grierson and Madame Salma have already occurred. The IAS court’s rulings with respect to Chalk, Marr and Madame Salma were not such an improvident exercise of discretion as to warrant reopening of these depositions. Defendants waived their objections to the Special Master’s hmitation of the Grierson letter of request by failing to make any arguments about it to the IAS court. In any event, the IAS court has indicated that it might allow a further deposition of Grierson, and defendants have circulated revised letters of request for Grierson and Sandy.
We discuss the following issues because they may recur in the future with respect to letters of request. First, Prince Jefri waived the work product privilege by repeatedly saying he relied on his lawyers to investigate the facts and make sure the complaint was accurate (see County of Erie v Kenford Co., 55 AD2d 466 [1977]). Second, to the extent some of the documents requested by defendants relate to their dismissed claims, they are not entitled to them. Third, the cross-examiner at trial will be “bound by the answers of the witness to questions on collateral matters inquired into solely to affect credibility” (Prince, Richardson on Evidence § 6-305 [Farrell 11th ed]), except for the witness’s general reputation for truth and veracity (see People v Pavao, 59 NY2d 282, 289 [1983]).
Plaintiffs claim that certain transactions in which defendants engaged violated the consent order. However, the consent order says that certain transactions are permitted with BIA’s prior written consent. Therefore, defendants should be permitted to ask BIA for documents evidencing its prior written consent to Zaman’s employment contract, Derbyshire’s contract with Gilt Management, the subleases that Amedeo or the hotel granted to Fitzjohn’s and Eurofinch, the charges on Zaman’s and Derby-shire’s credit cards that plaintiffs allege were unauthorized, and the purchase of plasma televisions by Golden Twist. Of course, such discovery will be unnecessary if plaintiffs decide not to use the consent order.
Given defendants’ refusal to bear the cost of restoring backup *925 tapes and examining computers for deleted materials, their requests were properly denied (cf. Waltzer v Tradescape & Co., L.L.C., 31 AD3d 302, 304 [2006]). This is without prejudice to any arguments the partiés might make in a cost allocation proceeding that is apparently pending in Delaware.
We decline to consider defendants’ request that this case be remanded to a different judge, absent a motion below and a concomitant record that would permit proper appellate review.
Concur—Gonzalez, RJ., Andrias, Acosta, Renwick and AbdusSalaam, JJ.