**Bleron BARALIU, Plaintiff,**

v.

**VINYA CAPITAL, L.P. and Michael Desa, Defendants.**

**No. 07 Civ. 4626(MHD).**

United States District Court,
S.D. New York.

Jan. 6, 2011.

Alfred J. Smith, Jr., Alfred J. Smith, Jr. Esq., Stamford, CT, for Plaintiff and Counter Defendant.

Morlan Ty Rogers, Vandenberg & Feliu, LLP, New York, NY, Tani E. Sapirstein, Sapirstein & Sapirstein, PC, Springfiled, MA, for Defendants.

## MEMORANDUM & ORDER

MICHAEL H. DOLINGER, United States Magistrate Judge.

Before the court is defendants' motion for summary judgment on plaintiff's remaining claims for breach of his employ-

ment contract with defendants. For the reasons that follow, the motion is granted.

### PROCEDURAL HISTORY

Plaintiff Bleron Baraliu ("Baraliu") originally filed this lawsuit in the United States District Court for the District of Connecticut in August 2006 against defendants Vinya Capital, L.P. ("Vinya"), a hedge fund management company, and Michael deSa ("deSa"), the manager and owner of Vinya. *Baraliu v. Vinya Capital, L.P.*, 2007 WL 1346918, at *1 (D.Conn. May 7, 2007). On May 7, 2007, Judge Alfred V. Covello, U.S.D.J., granted defendants' motion to the extent of transferring the entire action to the Southern District of New York on the basis of a forum-selection clause contained in Baraliu's employment contract, but did not address the remaining aspects of defendants' motion to dismiss. *Id.* at *2–*4; *see also* Pl.'s Ex. 1 at ¶ 13; Defs.' Ex. C at ¶ 13.

Following transfer to this Court, on October 5, 2007 plaintiff filed an amended complaint. This complaint fleshed out the plaintiff's factual narrative and contained some slight revisions to his original claims which are largely irrelevant here. (*See* Am. Compl. ¶¶ 10–54). Defendants moved to dismiss all of plaintiff's claims except Counts Three and Four, both of which seek damages for defendants' alleged breach of plaintiff's employment contract with Vinya. On March 31, 2009, all parties having consented to my exercise of plenary jurisdiction under 28 U.S.C. § 636(c), we granted defendants' motion in its entirety. *Baraliu v. Vinya Capital, L.P.*, 2009 WL 959578, at *1 (S.D.N.Y. Mar. 31, 2009). The parties then conducted discovery on the remaining two breach-of-contract claims, both of which stem from defendants' alleged failure to pay plaintiff various forms of bonus compensation to which he claims to be entitled.

Count Three refers specifically to a bonus payment of $500,000, payable on an unspecified date. (Am. Compl. at ¶¶ 21–26). Count Four refers to a bonus granted in the form of a 2.5% ownership stake in Vinya itself, along with the right to purchase an additional 7.5% stake. (*Id.* at ¶¶ 27–32). Baraliu values this claimed 10% of Vinya at $1,000,000. (*Id.* at ¶ 32). The Amended Complaint avers that Vinya and deSa promised to pay Baraliu these bonuses in order to induce him to stay at Vinya through 2005 while several high-ranking employees were leaving the company, which eventually failed. (*See* Am. Compl. at ¶¶ 21, 27, 30).

At the close of discovery, defendants moved for summary judgment on both claims on the basis that plaintiff's written employment contract did not require payment of the bonuses.

### STANDARD OF REVIEW

#### A. Summary–Judgment Standards

Before addressing defendants' summary-judgment motion, we summarize the pertinent standards for assessing such a motion. The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Shade v. Hous. Auth. of the City of New Haven*, 251 F.3d 307, 314 (2d Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). It

is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986); *see, e.g., Ricci v. DeStefano,* ── U.S. ──, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see, e.g., Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir.2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g., Celotex,* 477 U.S. at 322–23, 325, 106 S.Ct. 2548; *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). If the movant fails to meet its initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Giannullo v. City of New York,* 322 F.3d 139, 140–41 (2d Cir. 2003).

If the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fat. *See, e.g., Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). In doing so, the opposing party cannot rest "merely on allegations or denials" of the factual assertions of the movant, Fed.R.Civ.P. 56(e); *see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 59–60 (2d Cir. 2004), nor can he rely on his pleadings or on merely conclusory factual allegations. *See, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir.2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. *See, e.g., Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 526 (2d Cir.1994). This requirement cannot be satisfied by statements made "upon information and belief." *Khan v. Douglas Machine & Tool Co., Inc.,* 661 F.Supp.2d 437, 449 (S.D.N.Y. 2009) (citing *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir.2004)).

### B. Assessment of Defendants' Motion

#### 1. The Pertinent Facts

Baraliu and Vinya executed an employment agreement on August 24, 2004 (the "Original Agreement"). (Defs.' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs.' Rule 56.1 State-

ment"), at ¶ 3, Sept. 14, 2009;[1] *see also* Pl.'s Ex. 1, Defs.' Ex. C). Defendant deSa signed the Original Agreement; the signature block states that it was signed by deSa as the Managing Member of Vinya Management LLC, which was the general partner of Vinya. (*See* Pl.'s Ex. 1, Defs.' Ex. C). This agreement provided that plaintiff would be employed by Vinya as a Foreign Exchange/Emerging Markets trader, beginning on September 7, 2004. (Pl.'s Ex. 1 at ¶ 1; Defs.' Ex. C at ¶ 1; Defs.' Rule 56.1 Statement at ¶ 3.). Baraliu's employment with Vinya was, according to the express terms of the Original Agreement, at-will. (Pl.'s Ex. 1 at ¶ 3; Defs.' Ex. C at ¶ 3) ("Either of us is free to determine that you should no longer be employed by Vinya and terminate your employment, which is 'at will.' … Vinya is free to ask you to leave and terminate your employment, at any time, with or without cause.").[2]

According to the terms of the Original Agreement, plaintiff's initial base salary was set at $175,000 per year. (Pl.'s Ex. 1 at ¶ 2; Defs.' Ex. C at ¶ 2). He was to receive a guaranteed bonus of $50,000 "upon commencement of [his] employment with Vinya" and another guaranteed bonus of $100,000, "to be paid on July 1st, 2005." (Pl.'s Ex. 1 at ¶ 2; Defs.' Ex. C at ¶ 2). This was the extent of Baraliu's guaran-

teed compensation in the Original Agreement. The same paragraph did, however, leave open the possibility of additional bonus compensation, stating that "[Baraliu] will also be entitled to such incentive compensation for calendar year 2005 (payable, if awarded, in the first quarter of 2006) as may be awarded to [him] in the sole discretion of Vinya." (Pl.'s Ex. 1 at ¶ 2; Defs.' Ex. C at ¶ 2). This provision also stated, however, that "[n]o incentive compensation shall be due [to Baraliu] unless and until awarded in writing by Vinya, in its sole and absolute discretion." (Pl.'s Ex. 1 at ¶ 2; Defs.' Ex. C at ¶ 2).

The Original Agreement contains a merger clause, which states that it represents the entire agreement between Baraliu and Vinya, "other than with respect to any incentive or deferred compensation or profit participation arrangements [Baraliu] may enter into with Vinya (although there can be no assurance that [Baraliu] will be permitted to participate in such arrangements, and such participation may be subject to additional conditions …)." (Pl.'s Ex. 1 at ¶ 12; Defs.' Ex. C at ¶ 12). While this clause does leave open the possibility of additional later agreements as to bonus compensation, the same paragraph also contains a no-oral-modification clause, stating that the Original Agreement "may be

1.  Defendants submitted a statement of material facts in accordance with Local Rule 56.1. Plaintiff's opposition does not contest the majority of the facts averred in defendants' Rule 56.1 statement. (*See* Pl.'s Local Rule 56(a)(1) Statement, Oct. 8, 2009 ("Pl.'s Rule 56.1 Statement")). Where the parties are in agreement as to the facts, we will cite to defendants' Rule 56.1 statement without further explanation.

2.  Baraliu claims that an addendum to the Original Agreement "changed his employment status from at-will to an employment contract employee." (Pl.'s Mem. of Law at p. 5 (citing Pl.'s Ex. 2)). The addendum in ques-

tion does not address plaintiff's employment status, and so we take plaintiff's conclusory statement as an argument that the April Addendum's silence on this subject somehow operates to conflict with the Original Agreement and thereby supersede it on this point. Plaintiff made an identical argument before Judge Covello in an unsuccessful effort to avoid the Original Agreement's forum selection clause, and we find it equally unavailing here. *See Baraliu,* 2007 WL 1346918, at *3 (citing, *inter alia, Marine Transport Lines v. Int'l Org. of Masters, Mates & Pilots,* 696 F.Supp. 1, 16 (S.D.N.Y.1988), *aff'd* 878 F.2d 41 (2d Cir.1989)).

amended, modified or terminated at any time only by the mutual written agreement of the parties hereto." (Pl.'s Ex. 1 at ¶ 12; Defs.' Ex. C at ¶ 12).

The Original Agreement was in fact modified at least once, by an Addendum dated April 11, 2005 (the "April Addendum"). (Defs.' Rule 56.1 Statement at ¶ 6; Pl's Ex. 2, Defs.' Ex. D). The Addendum states that it amends the Original Agreement and that the Addendum "shall govern" in the case of any conflict between the two. The relevant paragraph of the April Addendum—which revised the agreement between Baraliu and Vinya regarding his bonus compensation—reads in its entirety as follows:

> [Baraliu] will be paid a guaranteed bonus of $100,000 on July 1, 2005. Also, [Baraliu] will not be paid [a] January 1, 2006 bonus of $150,000, but will instead receive a $1,000,000 investment under the name of Bleron Baraliu in the Vinya Global Fund, LLC when the aggregate assets under management in Vinya Global Portfolio, Ltd. reach $300,000,000; provided [he] continue[s] to be employed by [Vinya] at such a time. Additionally [Baraliu] will also be entitled to bonus compensation based on performance and as may be awarded to [Baraliu] in the sole discretion of Vinya. No incentive compensation shall be due unless and until awarded in writing by Vinya, in its sole and absolute discretion.

(Pl's Ex. 2, Defs.' Ex. D). Notably, the April Addendum does not guarantee Baraliu a $500,000 bonus, a 2.5% ownership stake in Vinya, or the right to purchase a 7.5% ownership stake in Vinya. And since Vinya's aggregate assets under management never reached $300,000,000—in fact, Baraliu's amended complaint stated that they reached a "maximum of $58.3 million," *Baraliu,* 2009 WL 959578, at *6 (quoting Am. Compl. ¶ 38)—Baraliu's

claim for the $1,000,000 investment in Vinya provided for as a bonus payment in the April Addendum was dismissed pursuant to our March 31, 2009 order. *Id.* at *5–*6.

Plaintiff has also submitted a document, dated September 12, 2005 (the "September Addendum"), which he claims is an additional written modification to the Original Agreement. (*See* Defs.' Rule 56.1 Statement at ¶¶ 12–24; Pl's Ex. 3, Defs.' Ex. E). This document states that it "shall take immediate effect upon full execution[.]" (Pl's Ex. 3, Defs.' Ex. E). It also states that "[i]f the foregoing correctly reflects our mutual agreement with respect to the matters set forth herein, please confirm by executing and returning this letter to the undersigned whereby this agreement will be a binding agreement between [Baraliu] and Vinya [ ] in accordance with its terms." (Pl's Ex. 3, Defs.' Ex. E).

The September Addendum was signed by deSa on September 12, 2005, and by plaintiff on October 3, 2005. (Pl's Ex. 3, Defs.' Ex. E). Defendants deny that the September Addendum ever took effect (Defs.' Mem. of Law at p. 2), basing their contention on Baraliu's testimony that he never communicated his acceptance of the September Addendum to deSa and never returned the executed copy to deSa. (*See* Pl.'s Dep. 89:20–90:6, 91:6–15, Ill:9–19).

The September Addendum, if effective, further revises Baraliu's agreement with Vinya as to his compensation. First, it states in substantially the same terms as the April Addendum that Baraliu is to receive a $1,000, 000 investment in the Vinya Global Fund when the aggregate assets under management by Vinya reached $300,000,000, provided that Baraliu remained an employee of Vinya at that time. (Pl's Ex. 3, Defs.' Ex. E). Second, it provides for Baraliu's claimed ownership stake in Vinya, via the following paragraph:

[Baraliu] will receive a 2½ % ownership as a limited partner in Vinya Capital, L.P. at no additional cost to [Baraliu] upon [his] execution and delivery of the Limited Partnership Agreement of Vinya Capital, L.P. ("Limited Partnership Agreement") pursuant to which [Baraliu] agree[s] to be bound by the terms of the Limited Partnership Agreement. [Baraliu] acknowledge[s] and agree[s] that [he] ha[s] reviewed and understand[s] the terms of the Limited Partnership Agreement attached hereto, including without limitation the investor representations in Section 8.01 thereof, and that any limited partnership interests in Vinya Capital, L.P. that [Baraliu] acquire[s] in connection with this Letter Agreement will be subject to the terms of the Limited Partnership Agreement (and as such Limited Partnership Agreement may be amended in accordance with the terms thereof), and that the percentage of limited partnership interests in Vinya Capital, L.P. that [Baraliu] own[s] may be subject to adjustment or dilution.

(Pl's Ex. 3, Defs.' Ex. E). Again, this section does not mention any right to purchase a 7.5% ownership stake in Vinya, nor does it mention any $500,000 bonus. The next paragraph is copied word-for-word from the April Addendum, and reads, "Additionally [Baraliu] will also be entitled to bonus compensation based on performance and as may be awarded to [Baraliu] in the sole discretion of Vinya. No incentive compensation shall be due unless and until awarded in writing by Vinya, in its sole and absolute discretion." (Pl's Ex. 3, Defs.' Ex. E).

Baraliu's claim for a guaranteed 2.5% ownership stake rests entirely on the September Addendum. Perhaps aware that there is no written documentation of any contract entitling him to either the $500,000 cash bonus or the 7.5% ownership

purchase right to which he alleges he is due, Baraliu avers that his contractual rights to these additional forms of compensation arise out of oral agreements with deSa. (Pl.'s Mem. of Law at p. 2–3, 7–8). In his deposition, Baraliu testified that at some point deSa promised to pay him a bonus of $500,000 if he agreed to stay with Vinya despite the company's ongoing difficulties. (Pl. Dep. 53:20–54:20, 56:13–57:8). He also testified that this promise was never put in writing, averring that this was due to deSa's habit of procrastination. (Pl. Dep. 55:3–17, 56:21–57:2). Baraliu further testified that his 7.5% ownership purchase right was part of the same discussions with deSa that eventually led to the September Addendum, and that he expected the 7.5% ownership purchase right to be part of the additional compensation promised to him in the September Addendum. (Pl. Dep. 78:3–15, 79:16–22, 80:5–81:5, 81:23–82:4). In fact, it appears from Baraliu's deposition testimony that he believed that the September Addendum would contain all three forms of bonus compensation claimed herein, and that he was extremely unhappy when he received the September Addendum and saw that it referred only to the 2.5% ownership grant. (See Pl. Dep. 89:20–90:24). Nevertheless, Baraliu testified, he signed the September Addendum because he saw it as "an offer that [deSa] made and it was a starting base for [him]." (Pl. Dep. 90:25–91:5).

Plaintiff's employment with Vinya ended on December 2, 2005. (Pl. Dep. 8:19–9:3). The company closed on December 1, 2007. (deSa Dep. 7:10–16).

### 2. The Legal Framework

Both of Baraliu's remaining claims rely on his assertion that the defendants breached Baraliu's employment contract and various purported modifications to it. Since the contract unequivocally states

that it is controlled by New York law (Pl.'s Ex. 1 at ¶ 13; Defs.' Ex. C at ¶ 13), we briefly state the controlling legal standards in the state of New York, then apply them to the defendants' motion.

"Under New York law, to establish a breach of contract, plaintiffs must show '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *DBT GmbH v. J.L. Mining Co.*, 544 F.Supp.2d 364, 375 (S.D.N.Y.2008) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir.2004)). "Judgment as a matter of law is appropriate where contract language is unambiguous." *Id.* at 375–76 (citing *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir.2003)). Baraliu's claims fail at either the first step, where he has failed to show the existence of a valid contract requiring defendants to pay him a $500,000 bonus or give him the right to purchase a 7.5% ownership stake in Vinya, or at the second step, where he has failed to show that he performed a condition precedent to receiving the 2.5% ownership stake purportedly granted to him by the September Addendum.

All of Baraliu's breach-of-contract claims rely on his assertions that the Original Agreement was validly modified by either (1) the September Addendum, or (2) various oral statements made by deSa, upon which he relied. His claim for a 2.5% ownership stake is based entirely on the September Addendum. (*See* Pl's Ex. 3, Defs.' Ex. E). His claim for a $500,000 bonus and 7.5% ownership purchase right is based on alleged oral agreements with deSa—agreements that Baraliu testified were entered into prior to the execution of the September Addendum, but not contained within the September Addendum. We will first address the claims that rest on the alleged oral agreements, and then turn to the claim resting on the September Addendum.

### a. Claims Arising from Oral Agreements

Since the original contract between Baraliu and Vinya contains a no-oral-modification clause, the New York Statute of Frauds, New York General Obligations Law § 15–301, applies. This section states that

> "[a] written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

N.Y. Gen. Oblig. Law § 15–301(1). The party seeking to avoid the effect of this provision—here, Baraliu—can only do so by showing either partial performance or equitable estoppel. *See Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F.Supp.2d 507, 518 (S.D.N.Y.2009) (citing *United States v. Schwimmer*, 968 F.2d 1570, 1575 (2d Cir.1992)). Partial performance will allow avoidance of the Statute of Frauds only if the performance is "'unequivocally referable' to the new contract." *Merrill Lynch Interfunding v. Argenti*, 155 F.3d 113, 122 (2d Cir.1998) (quoting *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 343–44, 397 N.Y.S.2d 922, 926, 366 N.E.2d 1279 (1977)). "In other words, 'the actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement.'" *Randolph Equities, LLC*, 648 F.Supp.2d at 518 (quoting *Anostario v. Vicinanzo*, 59 N.Y.2d 662, 664, 463 N.Y.S.2d 409, 410, 450 N.E.2d 215 (1983)). "Equitable estoppel applies if one party to the written contract has induced another's significant and substantial reliance upon an oral modification,

and if the conduct relied upon is not otherwise compatible with the agreement as written." *Id.* (quoting *EMI Music Mktg. v. Avatar Records, Inc.,* 317 F.Supp.2d 412, 421 (S.D.N.Y.2004) (internal quotation marks and ellipsis omitted)).

■ For this action, the key aspect of New York law is that, for either partial performance or equitable estoppel to apply and show an effective oral modification to the written contract, the conduct relied upon by the plaintiff to prove the modification must be "not otherwise compatible with the agreement as written." *Indus. Window Corp. v. Fed. Ins. Co.,* 609 F.Supp.2d 329, 339 (S.D.N.Y.2009) (quoting *Rose,* 42 N.Y.2d at 343–44, 397 N.Y.S.2d at 927, 366 N.E.2d 1279) (internal brackets omitted). While Baraliu at various times claims that he continued to work at Vinya in reliance upon deSa's oral promises of additional bonus payments or ownership grants, he has provided no evidence of conduct or performance that cannot be traced to the Original Agreement, which bound him to work for Vinya. Where, as here, the performance relied upon by the plaintiff to show partial performance or equitable estoppel "was already required under the terms of the original [ ]contract," the statute of frauds controls and bars plaintiff's claims resting upon a purported oral modification. *Id.* at 340; *see also Tierney v. Capricorn Investors, L.P.,* 189 A.D.2d 629, 631, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) ("Plaintiff's performance here, however, would be equally consistent with his desire to continue to earn his compensation under the written Employment Agreement, as with the alleged oral modification."). Hence, the no-oral-modification clause controls,

and Baraliu's claims for a $500,000 bonus and the right to purchase a 7.5% ownership stake in Vinya fail as a matter of law. We therefore grant defendants' motion for summary judgment on Count Three and so much of Count Four as refers to Baraliu's alleged right to purchase 7.5% of Vinya.

■ Even in the absence of Gen. Oblig. Law 15–301 and the no-oral-modification clause, New York law provides an additional reason why the alleged modification is not a valid contract and defendants' motion must be granted. "To be enforceable, an oral modification must possess all of the elements necessary to form a contract, including valid consideration." *Cohan v. Movtady,* 751 F.Supp.2d 436, 442, 2010 WL 4608751, at *5 (E.D.N.Y. Nov. 1, 2010) (citing cases). An agreement to do something which the promisor is already required to do by an existing contract is unsupported by consideration. *See Indus. Window Corp.,* 609 F.Supp.2d at 340 ("[E]ven assuming ... that the alleged oral modifications were otherwise valid, there is no indication that such modifications ... were supported by adequate consideration.") (citing *Tierney,* 189 A.D.2d at 631, 592 N.Y.S.2d at 703 (1st Dept.1993)). Since Baraliu was already bound to continue working for Vinya by the terms of the Original Agreement, the alleged oral modifications to that Agreement fail for lack of consideration, and we grant defendants' motion for summary judgment on those claims on this alternative basis as well.[3]

### b. Claims Arising from the September Addendum

■ Baraliu's remaining claim—that he was granted a 2.5% ownership stake in

---

**3.** To the extent that Baraliu claims that the consideration for the modification was his reliance on deSa's allegedly fraudulent misrepresentations of various facts, such as forthcoming investments in Vinya or the potential for additional bonus compensation (*see* Pl.'s Mem. of Law at 5–7), his argument must fail, since his fraud claims have already been dismissed due to his failure to plead reasonable and justifiable reliance on deSa's alleged misrepresentations. *Baraliu,* 2009 WL 959578, at *8–*9.

Vinya upon execution of the September Addendum—likewise fails as a matter of law.

"It is a fundamental rule of contract law that an acceptance must comply with the terms of the offer." *Rochester Home Equity, Inc. v. Guenette*, 6 A.D.3d 1119, 1120, 775 N.Y.S.2d 680, 681 (4th Dep't 2004) (quoting *Gram v. Mut. Life Ins. Co. of N.Y.*, 300 N.Y. 375, 382, 91 N.E.2d 307, 311 (1950)); *see also Farago Advertising, Inc. v. Hollinger Int'l, Inc.*, 157 F.Supp.2d 252, 258 (S.D.N.Y.2001) ("An offeror can 'dictate the manner of an offeree's acceptance'") (*quoting Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 58 F.Supp.2d 228, 249 (S.D.N.Y. 1999)). "[W]here, as here, the offer specifies the mode of acceptance, an acceptance in any other manner is wholly nugatory and ineffectual." *Id.* (quoting *Spratt v. Paramount Pictures*, 178 Misc. 682, 684, 35 N.Y.S.2d 815, 817 (Sup.Ct.N.Y.Cty. 1942) (internal ellipses and brackets omitted)). The September Addendum unambiguously stated that Baraliu was to accept it "by executing and returning this letter to the undersigned [deSa] whereby this agreement will be a binding agreement between you and Vinya [ ] in accordance with its terms." (Pl.'s Ex. 3; Def.'s Ex. E). Since Baraliu testified that he never returned the September Addendum to deSa—indeed, that the original was still in his possession (*see* Pl.'s Dep. 111:9–19)–his acceptance was never valid and no contract was formed.

Moreover, "it is essential in any bilateral contract that the fact of acceptance be communicated to the offeror." *Agric. Ins. Co. v. Matthews*, 301 A.D.2d 257, 259, 749 N.Y.S.2d 533, 535 (1st Dep't 2002). Baraliu's testimony that he never communicated his acceptance of the September Addendum to deSa (Pl.'s Dep. 111:9–19; *see also* Defs.' Rule 56.1 State-ment at ¶ 14) is likewise fatal to his claim for a 2.5% ownership interest in Vinya. This omission by Baraliu is more than a mere formality. He testified that he had assumed that the September Addendum would include not only the 2.5% ownership grant, but also a 7.5% ownership purchase right and a guaranteed $500,000 bonus, and that he was disappointed by the omission of those terms. (*See* Pl. Dep. 89:20–90:24). Under these circumstances, Baraliu's failure to return the signed agreement appears to have been designed to allow him to avoid committing to an agreement that he evidently viewed as deficient. In short, his non-compliance with the requirements for a binding deal cannot be viewed as a mere or excusable technicality.

Even assuming that Baraliu's signature of the September Addendum constituted a valid acceptance, Baraliu did not perform a condition precedent to receipt of his 2.5% ownership grant, so his claim for this additional compensation must fail as a matter of law. A condition precedent is "an act or event, other than a lapse of time, which, unless [ ] excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 737, 660 N.E.2d 415 (1995). "Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract." *Id.* Where the language of a contract "makes it unmistakably clear that a condition precedent was intended, literal observance is required." *Pramco III, LLC v. Partners Trust Bank*, 16 Misc.3d 351, 358, 842 N.Y.S.2d 174, 181 (Sup.Ct. Monroe Cty.2007); *David Fanarof, Inc. v. Dember Constr. Corp.*, 195 A.D.2d 346, 348, 600 N.Y.S.2d 226, 227–28 (1st Dept. 1993) ("When commercial parties expressly agree that a specified occurrence shall be a

condition precedent to the creation or enforceability of a right or obligation, and there is no ambiguity arising out of other language in their contract, the only question for the court is whether the condition precedent has been complied with.").

The September Addendum states that Baraliu would receive a 2.5% ownership stake "as a limited partner in Vinya Capital, L.P. ... *upon [his] execution and delivery of the Limited Partnership Agreement of Vinya Capital, L.P.*" (Pl.'s Ex. 3; Defs.' Ex. E (emphasis added)). The qualifying language in this paragraph makes it clear that Baraliu's grant of ownership was not to take place upon his execution of the September Addendum, but only upon his completion of an additional express condition—execution and delivery of the agreement making him a limited partner in Vinya.

Baraliu's testimony as to whether he received the Limited Partnership Agreement is somewhat conflicted. He repeatedly testified that he could not remember seeing it and did not know what it looked like (Pl. Dep. 95:5–9, 117:2–5), but he also apparently told another Vinya employee that he had taken a copy of it. (*See* Pl. Dep. 114:23–116:25). Similarly, at one point Baraliu testified that he "may have" delivered the Limited Partnership Agreement back to Vinya (Pl. Dep. 94:22–95:8), but later testified that he never signed the Limited Partnership Agreement (Pl. Dep. 95:11–22) and never delivered a signed copy of the Limited Partnership Agreement back to Vinya. (Pl. Dep. 116:21–177:11). This testimony is simply insufficient to create a dispute of material fact as to whether Baraliu ever performed the condition precedent to his award of a 2.5% ownership interest in Vinya pursuant to the September Addendum, and plaintiff presents no other evidence in his favor on this point. Moreover, plaintiff does not contest the portion of defendants' Rule 56.1 Statement which states, "Plaintiff never reviewed, signed or delivered the limited partnership agreement of Vinya." (Defs.' Rule 56.1 Statement at ¶ 17; *see also* Pl.'s Rule 56.1 Statement at p. 3). We therefore find that Baraliu has failed to establish the existence of a dispute of material fact as to his claim for a 2.5% ownership stake in Vinya, and grant defendants' motion for summary judgment as to the remainder of Count Four.

Since we find that plaintiff has failed to demonstrate a genuine issue of material fact on his breach-of-contract claims, there is no need to consider whether plaintiff could have asserted them against deSa individually in place of (or in addition to) Vinya. *Cf. Baraliu,* 2009 WL 959578, at *6 n. 6. In the interest of completeness, however, we note that "[a]n agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Israel v. Chabra,* 537 F.3d 86, 97 (2d Cir.2008) (quoting *Savoy Record Co. v. Cardinal Export Corp.,* 15 N.Y.2d 1, 4, 254 N.Y.S.2d 521, 523, 203 N.E.2d 206 (1964)). Baraliu has presented no evidence that deSa intended to be personally bound, and his claim against deSa personally must therefore fail. Similarly, his allegations that Vinya's corporate veil should be pierced are little more than conclusory statements made "[o]n information and belief" by his attorney (Pl.'s Mem. of Law at p. 10), and this is insufficient to survive a motion for summary judgment. *Khan,* 661 F.Supp.2d at 449 (citing *Patterson v. County of Oneida, N.Y.,* 375 F.3d at 219). The only evidence Baraliu presents in favor of his request to pierce the corporate veil is that deSa, in his capacity as Vinya's chief investment officer, donated some of Vinya's computers and furniture to various chari-

ties in India. (Pl.'s Mem. of Law at p. 10 (citing deSa Dep. at 28:7–29:15)). This evidence, standing alone, is plainly insufficient to pierce the corporate veil. *See, e.g., Casa de Meadows Inc. (Cayman Islands) v. Zaman,* 76 A.D.3d 917, 923, 908 N.Y.S.2d 628, 634 (1st Dep't 2010) ("Evidence of domination alone does not suffice [to pierce the corporate veil] without an additional showing that it led to inequity, fraud or malfeasance.") (quoting *TNS Holdings v. MKI Sec. Corp.,* 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893, 703 N.E.2d 749 (1998)). Hence we also find it appropriate to grant defendant deSa's motion for summary judgment insofar as it pertains to Baraliu's claims against him individually.

### CONCLUSION

Plaintiff Bleron Baraliu has failed to raise any genuine issues of material fact that would suffice to defeat defendants' motion for summary judgment. He has failed to present evidence sufficient to overcome the no-oral-modifications clause in his original employment contract with Vinya Capital, L.P. and entitle him to the bonus compensation that he claims he is due under an oral modification to that contract. He has also failed to present evidence showing that he fulfilled a condition precedent to obtaining a 2.5% ownership stake in Vinya pursuant to the September Addendum, or even that the September Addendum ever took effect. Finally, even had he raised a genuine issue of material fact as to his breach-of-contract claims, he has not provided sufficient evidence to hold defendant deSa personally responsible on them. For the reasons stated above, we grant defendants' motion for summary judgment in its entirety.